# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-IA-00813-SCT

*JAMES HINES, WANDA HINES AND*
*MISSISSIPPI DEPARTMENT OF CHILD*
*PROTECTION SERVICES*

*v.*

*JOHN CALDWELL AND AMY CALDWELL*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/17/2023 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD, JR. |
| TRIAL COURT ATTORNEYS: | JESSICA B. BUCKLES |
| | BENJAMIN DAVID MURPHY |
| | JERRY WESLEY HISAW |
| | VICTORIA ANN LOWERY |
| | WENDY MOORE SHELTON |
| | GINGER M. MILLER |
| | RYAN STEWART EVANS |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | JERRY WESLEY HISAW |
| | VICTORIA ANN LOWERY |
| | WENDY MOORE SHELTON |
| | ROBERT EUGENE JONES, II |
| ATTORNEYS FOR APPELLEES: | BENJAMIN DAVID MURPHY |
| | JESSICA B. BUCKLES |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | REVERSED AND REMANDED - 05/02/2024 |
| MOTION FOR REHEARING FILED: | |

## CONSOLIDATED WITH

## NO. 2023-IA-00839-SCT

*JAMES HINES, WANDA HINES AND*
*MISSISSIPPI DEPARTMENT OF CHILD*
*PROTECTION SERVICES*

*v.*

*JOHN CALDWELL AND AMY CALDWELL*

DATE OF JUDGMENT:                07/17/2023
TRIAL JUDGE:                     HON. PERCY L. LYNCHARD, JR.
COURT FROM WHICH APPEALED:       DESOTO COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANTS:        WENDY MOORE SHELTON
                                 VICTORIA ANN LOWERY
                                 JERRY WESLEY HISAW
                                 ROBERT EUGENE JONES, II
ATTORNEYS FOR APPELLEES:         BENJAMIN DAVID MURPHY
                                 JESSICA B. BUCKLES
NATURE OF THE CASE:              CIVIL - CUSTODY
DISPOSITION:                     REVERSED AND REMANDED - 05/02/2024
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE KING, P.J., COLEMAN AND BEAM, JJ.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.     The Chancery Court of DeSoto County granted foster parents durable legal and physical custody of a child in a temporary order until the final hearing on the merits of their adoption petition and dismissed Mississippi Department of Child Protection Services (CPS) without a hearing.  The relatives who sought temporary placement of the child as well as adoption joined CPS in filing this interlocutory appeal.

**FACTS AND PROCEDURAL HISTORY**

¶2.     The minor child, J.B., is a female born in March 2021. J.B. came into CPS custody on May 18, 2021, and was placed in the home of John and Amy Caldwell (foster parents) on

2

June 21, 2021. Initially, the permanency plan for J.B. was reunification with a parent or primary caretaker with a concurrent plan of custody with a relative.

¶3. In October 2022, Wanda Hines, maternal great aunt of J.B., learned of the youth court proceedings and contacted CPS about having J.B. placed with her and her husband, James, in George where they reside. The plan for J.B. was changed to adoption with a concurrent plan of custody with a relative.

¶4. On December 13, 2022, the youth court judge entered an order for termination of parental rights of both J.B.'s parents, making her eligible for adoption. In March 2023, the foster parents filed a petition for adoption in the DeSoto County Chancery Court. On April 11, 2023, the foster parents filed a motion asking the youth court to grant them durable legal custody and to transfer the matter to chancery court.

¶5. On May 3, 2023, the relatives filed a motion to intervene and dismiss the adoption proceeding in chancery court. On May 10, 2023, CPS approved the relatives' house for placement. On June 7, 2023, the chancellor granted the relatives' motion to intervene, appointed a guardian ad litem to make a recommendation regarding the child's best interest, and stated it would confer with the youth court to determine status and discuss the jurisdictional issue raised to determine whether the case should be transferred to chancery court.

¶6. On June 8, 2023, CPS filed a motion to dismiss or, in the alternative, to stay proceedings, alleging that J.B. was still in the custody of CPS and that it was working on

relative placement. Further, CPS alleged that the foster parents have violated their foster contract by pursuing an adoption action.

¶7. On June 15, 2023, the youth court judge granted the motion to transfer to chancery court for the chancellor to decide placement and adoption of J.B. On June 21, 2023, the relatives filed an intervening petition for adoption in chancery court. On June 26, 2023, the foster parents filed a motion for modification of durable legal custody in chancery court.

¶8. On July 12, 2023, the chancellor met in chambers with the guardian ad litem, the foster parents' attorney, and the relatives' attorney, as well as an attorney for CPS on the motion for modification. The chancellor conducted an "informal hearing" with no record and issued his ruling to the attorneys. The chancellor terminated CPS's legal and physical custody of the child and dismissed CPS from the case, which it said was a final ruling. The chancellor also modified on a temporary basis custody of the child, giving the foster parents durable legal and physical custody and giving the relatives visitation.

¶9. The temporary order was filed on July 17, 2023, and the relatives' attorney filed their petition for interlocutory appeal. CPS filed its emergency petition for interlocutory appeal. On August 30, 2023, this Court granted both petitions and consolidated the two appeals.

**STANDARD OF REVIEW**

¶10. "When reviewing a decision of a chancellor, this Court applies a limited abuse of discretion standard of review." *Mabus v. Mabus*, 890 So. 2d 806, 810 (Miss. 2003) (citing *McNeil v. Hester*, 753 So. 2d 1057, 1063 (Miss. 2000)). Further, an appellate court will

4

disturb a chancellor's findings if the chancellor's decision was "manifestly wrong, clearly erroneous, or applied the wrong legal standard." *Id.* (citing *McNeil*, 753 So. 2d at 1063).

## DISCUSSION

I.    **Whether the chancery court erred by divesting CPS of custody and dismissing CPS without a hearing.**

¶11.    The chancellor met in chambers with the guardian ad litem and attorneys on the foster parents' motion for modification of durable legal custody. After the chancellor conducted an "informal hearing" with no record, he terminated CPS's legal and physical custody of the child and dismissed CPS from the case.

¶12.    The chancellor erred by awarding permanent relief without a hearing. Divesting and dismissing CPS from the case is permanent relief. Permanent relief cannot be done without a hearing, even under the guise of a temporary order. *B.A.D. v Finnegan*, 82 So. 3d 608, 616 (Miss. 2012). "While 'a hearing on temporary custody may be more abbreviated than a hearing on permanent custody,' the trial court 'must receive evidence sufficient to assure the best interests of the child on a temporary basis.'" *Reynolds v. Reynolds*, 331 So. 3d 832, 834 (Fla. Dist. Ct. App. 2021) (quoting *Williams v. Williams*, 845 So. 2d 246 (Fla. Dist. Ct. App.).

¶13.    In *B.A.D.*, this Court held the chancellor erred by awarding custody to Finnegan, the natural parent, "without any on-the-record-findings." *B.A.D.*, 82 So. 3d at 616. There, the maternal grandfather, Richard, had custody of the child but subsequently passed away. *Id.* at 610. Finnegan agreed that Richard's live-in companion Bell could have temporary custody of the child. *Id.* Finnegan then filed for a release of custody. *Id.* Bell and the child's

5

maternal great aunt, Morse, filed a petition for coguardianship in chancery court and asked the youth court to transfer the case to chancery court. *Id.* The chancery court heard the matter, dismissing the petition for coguardianship with prejudice and giving full custody to Finnegan. *Id.* at 612. Bell and Morse appealed. *Id.* On appeal, this Court held that the "chancellor abused his discretion by dismissing the case and then awarding custody to Finnegan without any on-the-record findings." *Id.* at 616.

¶14. In *Denham v. Denham*, this Court reversed the judgment of the Court of Appeals for holding the chancellor's lack of a record regarding the children's in-camera testimony to be harmless error. *Denham v. Denham*, 351 So. 3d 954, 961 (Miss. 2022). We held it was not harmless error because "[i]t is impossible for this Court to review what the chancellor considered when we do not have a record before us[.]" *Denham*, 351 So. 3d at 961.

¶15. Similarly, in *Robison v. Lanford*, this Court held, "[w]e cannot properly review a chancellor's judgment without full knowledge of all the evidence the chancellor considered when making the judgment." *Robison v. Lanford*, 841 So. 2d 1119, 1124 (Miss. 2003). The Court of Appeals has said, and we agree, that "when the record itself contains no substantial evidence to account for the ruling, . . . we are compelled to reverse and remand to the chancellor for findings[.]" *Sootin v. Sootin*, 737 So. 2d 1022, 1027–28 (Miss. Ct. App. 1998).

¶16. Here, the chancellor did not make any on-the-record findings because he did not hold a hearing. Without a record or evidence, this Court has nothing to review. Accordingly, we reverse the temporary order, which granted permanent relief, and we remand the case for

6

further proceedings. The chancellor's decision to divest custody and dismiss CPS was permanent, and doing so was erroneous without a hearing.

¶17. This Court would further note that durable legal custody was enacted by the Mississippi legislature as an alternative to termination of parental rights. *In re Int. of S.A.M.*, 826 So. 2d 1266, 1276 (Miss. 2002). "Under durable legal custody, unlike termination of parental rights or adoption, the natural parents retain residual rights and responsibilities as to the child." *Id.* (quoting Miss. Code Ann. § 43-21-105(y) (2000)). While the chancellor has full authority to award custody in a contested adoption, durable legal custody is not an appropriate award after a termination of parental rights. *In re Int. of S.A.M.*, 826 So. 2d at 1278.

¶18. The relatives and CPS present a second issue on interlocutory appeal of whether the contractual agreement as foster parents bars relief sought in chancery court in contravention of CPS's policy regarding child placement. We do not consider this second issue because the chancellor did not hold a hearing.

## CONCLUSION

¶19. We reverse the temporary order for lack of a hearing and remand for further proceedings consistent with this opinion.

¶20. **AS TO NO. 2023-IA-00813-SCT: REVERSED AND REMANDED. AS TO NO. 2023-IA-00839-SCT: REVERSED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**

7